184 N.J. Super. 457 (1982)
446 A.2d 555
STEVEN MIKULICKA, INDIVIDUALLY AND STEVEN ENTERPRISES, INC., A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFFS,
v.
DAVID M. BAER, GIROLAMO GIOMBANCO, IONAB CORPORATION DBA VILLA CARINI RESTAURANT, A CORPORATION OF THE STATE OF NEW JERSEY AND FIRST NATIONAL STATE BANK-EDISON, A NATIONAL BANKING ASSOCIATION, DEFENDANTS.
Superior Court of New Jersey, Chancery Division Middlesex County.
Decided February 26, 1982.
*459 Donald T. Joworisak for plaintiff (Thomas Sharlow, attorney).
Steven Herman for defendant David M. Baer (Mandell & Shur, attorneys).
Eliot H. Gourvitz for defendant Girolamo Giombanco (Selesky, Kolsky, Gourvitz & Epstein, attorneys).
Glenn Roth for defendant Ionab Corporation (Roth & Elkinson, attorneys).
Victor A. Deutch for defendant First National State Bank-Edison (Stuart G. Brecher on brief; Ravin, Davis & Sweet, attorneys).
COHEN, J.S.C.
These cross-motions for summary judgment present a priority contest between the secured seller of a restaurant and the bank that helped to finance the buyer. Central to resolution of the contest are questions of the validity and effect of the refusal by the Secretary of State to file the seller's financing statement.
The seller owned a bar and lounge. He contracted to sell it to the buyer for $145,000, of which $109,000 was to be paid in installments. The payments were to be secured by a purchase money security interest in some business assets. The buyer also borrowed $40,000 from the bank, repayment of which was also to be secured by a security interest in some business assets.
*460 The closing was held on February 26, 1979. Three days before, on February 23, the buyer received the bank loan and signed a note and security agreement. Appropriate UCC-1 financing statements were filed with the Middlesex County Clerk on February 26 and with the Secretary of State on February 28. At the closing the buyer executed a $109,000 note and security agreement in favor of the seller. Appropriate UCC-1 financing statements were sent off for filing on the same day. The one sent to the county clerk was accepted and filed. The one sent to the Secretary of State was not. On March 6 it was sent back with a form letter stating that the $10 check tendered with the two-page document was insufficient and that filing of the second page required an additional $5 fee. When the seller received the March 6 mailing does not appear. On March 13 the seller sent the financing statement back to the Secretary of State with the demanded $15 and the document was filed on March 16.
In April the bank lent the buyer an additional $10,000 and in May a further $20,000. The entire loan of $70,000 was purportedly secured by the originally filed financing statements. N.J.S.A. 12A:9-204(5). Before advancing the final $20,000, according to the affidavit of a bank officer, the bank obtained a lien search that showed the seller's security interest to have been filed on March 16.
The bank was first to perfect its security interest in the restaurant assets. Ordinarily, that would give it priority over a later perfected security interest. N.J.S.A. 12A:9-312(5). But, a purchase money security interest in collateral other than inventory has priority over a competing security interest[1] if it is perfected (in this case by filing) within ten days after the debtor receives possession of the collateral, N.J.S.A. 12A:9-312(4), even *461 if the competing security interest is earlier perfected. Cf. N.J.S.A. 12A:9-312(3).
In this case, therefore, the seller's purchase money security interest in fixtures, which was perfected by filing a financing statement with the Middlesex County Clerk, N.J.S.A. 12A:9-401(1)(b), has priority over the bank's security interest in fixtures. If the Secretary of State had accepted and filed the seller's financing statement, his security interest in nonfixture, noninventory collateral would also have priority over the bank. What effect has the action of the Secretary of State?[2]
Filing, according to N.J.S.A. 12A:9-403(1), is accomplished by presentation of a financing statement for filing, tender of the filing fee and acceptance of the statement by the filing officer. "The uniform fee for filing ... for an original or continuation statement ... shall be $10.00." N.J.S.A. 12A:9-403(5). The seller presented the financing statement for filing and tendered the filing fee of $10. Yet, the Secretary of State did not accept it. He had decided many years ago that he would charge $5 extra to file a one-page financing statement with an attached second page, and $1 more for every additional page. He notified the bar of the additional charges in 1964. 87 N.J.L.J. 206. Since 1971 the additional charges have appeared in a schedule of fees published by the Uniform Commercial Code Section of the Department of State. See, also, 28 N.J. Practice, Uniform Commercial Code Forms, c. 9, pt. 3.
The Secretary of State has statutory authority to charge "For filing any paper or document for which no other fee is fixed, $5.00." N.J.S.A. 22A:4-1. But the fee for filing a UCC-1 financing statement is fixed. N.J.S.A. 12A:9-403(5) has fixed it at $10 and has done so without reference to the number of pages it contains. There is no statutory requirement that a financing *462 statement be limited to one page. N.J.S.A. 12A:9-402. The Secretary of State has no authority to ignore or to supplement the statutory charges fixed by the Legislature for his services. He therefore erred in refusing to accept and file seller's financing statement.
The seller should not bear the burden of the error of the Secretary of State.[3] For that reason, and except to the extent that competing security interests have arisen after the seller was aware or should have been aware that the record showed the contrary, the seller's security interest will be deemed to have been perfected on the day the Secretary of State first received his financing statement. This resolution gives the seller only what he was entitled to, namely, the statutory priority of purchase money security interests that are properly perfected. It deprives the bank of nothing it was entitled to. When it filed its financing statement, its security interest was statutorily subject to demotion in favor of a purchase money security interest perfected within ten days of the buyer's obtaining the collateral on February 26, 1979.[4]
After the actual filing, the public record showed a purchase money security interest that was filed on March 16 and therefore was junior to the bank's security interest. When the bank made an advance in April 1979 of $10,000, as it was permitted to do under the aegis of its February filing, N.J.S.A. 12A:9-204(5), it admittedly did not check the public record. Instead, it advanced money without regard to its priority. For that reason, the bank's security interest is junior to the seller's as to the $10,000 advance.
The second advance, for $20,000, was different. The bank advanced the funds only after searching the record and ascertaining *463 that it showed the bank's security interest to be superior. That was some two months after the seller knew that his financing statement was accepted for filing too late to qualify for the ten-day grace period. He therefore should have known that a lender with apparently superior interest might make advances on the basis of his position.
The priority choice must be made between a lender relying innocently on a false public record and a lender who knew and failed to make efforts to correct the false record of his own transaction, a false record he knew could be the subject of reliance by others. In such a case, the lender that innocently relied on the false record must be preferred. The party that failed to make efforts to correct that falsity must be estopped to assert his priority over the innocent lender in reliance on the record.
Counsel for plaintiff will submit an order declaring the seller's interest prior to the bank as to fixtures, without limitation, and as to other assets after satisfaction of $20,000 (and agreed interest) in debt owed the bank, and declaring the bank's interest superior as to all inventory and as to assets other than fixtures, to the extent of $20,000 and agreed interest.
NOTES
[1] The bank does not assert that its interest is a purchase money security interest. N.J.S.A. 12A:9-107(b). Apparently, the proceeds were intended for "start-up" expenses after purchase.
[2] The court invited the Attorney General to intervene in these proceedings, to present his views on the Secretary of State's actions. The Attorney General declined to do so.
[3] See Korfin v. Continental Cas. Co., 5 N.J. 154 (1950). Cf. Poetz v. Mix, 7 N.J. 436 (1951).
[4] Unlike the bank, the seller asserts no interest in inventory. Thus, this case is not further complicated by the inapplicability of the ten-day rule to inventory collateral. N.J.S.A. 12A:9-312(3) and (4).