576 A.2d 859

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v. ONE 1986 SUBARU, N.J. REG. AXB–13X, SERIAL NO. JF1AX45B3GB302047, DEFENDANT–RESPONDENT.

Argued January 29, 1990—Decided July 23, 1990.

*John S. Redden,* Deputy First Assistant Prosecutor, argued the cause for appellant (*Herbert H. Tate, Jr.,* Essex County Prosecutor).

*Ralph A. Colasanti* argued the cause for respondent.

The opinion of the Court was delivered by

POLLOCK, Justice.

Appellant, State of New Jersey, acting through the Essex County Prosecutor's Office, seeks to forfeit the subject Subaru of claimant, Anthony Matarazzo. The Law Division dismissed the complaint for failure to state a claim. *R.* 4:6–2(e). The Appellate Division affirmed, relying on the strict construction of the forfeiture statute, *N.J.S.A.* 2C:64–3a, and considerations of due process. 230 *N.J.Super.* 451, 553 *A.*2d 869 (1989).

We granted the State's petition for certification, 117 *N.J.* 61, 563 *A.*2d 826 (1989), and now affirm in part, reverse in part, and remand the matter to the Law Division.

I

Claimant was charged on October 1, 1987, with causing death by auto in violation of *N.J.S.A.* 2C:11–5, a third-degree offense. The charges arose out of a drag race on April 20, 1986, on Bloomfield Avenue in Newark. On the same day that defendant was charged, officials of the Essex County Prosecutor's Office seized claimant's car, a 1986 Subaru. Thereafter, claimant was convicted of death by auto and sentenced to three years' probation, two hundred hours of community service, six months' suspension of his driver's license, and forfeiture of his employment with the Union Township Public Health Department.

During the pendency of the criminal proceeding, the State filed a complaint with the Clerk of the Superior Court, Law Division, seeking forfeiture of the Subaru pursuant to *N.J.S.A.* 2C:64–3a. The statute provides:

> Whenever any property other than prima facie contraband is subject to forfeiture under this chapter, such forfeiture may be enforced by a civil action, instituted within 90 days of the seizure and commenced by the State and against the property sought to be forfeited.

Due to an error in the caption designating that the complaint was to be filed in the Special Civil Part, the clerk returned the pleading to the prosecutor on January 11, 1988, with instructions to refile it in the county of venue. The prosecutor

corrected the error, and on January 13, 1988, refiled the complaint with the Superior Court. For reasons unexplained in the record, the prosecutor did not issue a summons until February 23, 1988, forty-one days after filing the complaint. Subsequently, the summons and complaint were served on claimant on March 8, 1988.

Before service of the summons and complaint on claimant, the prosecutor's office filed a motion pursuant to *N.J.S.A.* 2C:64–3h for authorization to use the Subaru pending disposition of the matter. Claimant filed a cross-motion for dismissal of the forfeiture complaint and return of the car. He based his motion on the failure of the complaint to state a claim, *R.* 4:6–2(e), and on the delay in filing the complaint, *N.J.S.A.* 2C:64–3a, and in issuing the summons, *R.* 4:4–1. The trial court dismissed the complaint for failure to state a claim on which relief could be granted, holding that claimant's Subaru did not fall within the definition of non-*prima facie* contraband contained in *N.J.S.A.* 2C:64–1a(2).

The State appealed the dismissal for failure to state a claim, and the claimant cross-appealed the denial of dismissal for failure to timely file the complaint and issue a summons. The Appellate Division affirmed the dismissal because the summons had not issued within ten days, contrary to *Rule* 4:4–1. In reaching that result, the Appellate Division also stated that the complaint had been timely filed, and that *N.J.S.A.* 2C:64–1a(2) encompasses automobiles used to kill someone as a result of the driver's reckless conduct. 230 *N.J.Super.* at 458, 553 *A.*2d 869.

## II

Initially, we must determine whether the Appellate Division's construction of the rules requiring dismissal was correct. *N.J. S.A.* 2C:64–3c provides that "the notice requirements of the Rules of Court for an in rem action shall be followed" in civil-forfeiture actions brought pursuant to *N.J.S.A.* 2C:64–3a.

For *in rem* actions, notice is given by delivery of a summons. *R.* 4:4–5. Pursuant to *Rule* 4:4–1, "[i]f a summons is not issued within 10 days after the filing of the complaint the action *may* be dismissed in accordance with *R.* 4:37–2(a)." (Emphasis added.) That Rule provides:

> For failure of the plaintiff to cause a summons to issue within 10 days after filing the complaint * * *, the court *in its discretion* may on defendant's motion dismiss an action or any claim against him. Such a dismissal shall be without prejudice unless otherwise specified in the order. [*Rule* 4:37–2(a) (Emphasis added.)]

Read in conjunction with *Rule* 4:37–2(a), strict enforcement of the ten-day limit of *Rule* 4:4–1 is not required. *Rule* 4:4–1 states only that the court "may" dismiss for failure to timely issue the summons. *Rule* 4:37–2(a) makes clear that this decision is discretionary.

 Ordinarily, in the absence of demonstrable prejudice to the defendant, a complaint should not be dismissed because of untimely issuance of a summons. *McLaughlin v. Bassing*, 51 *N.J.* 410, 241 *A.*2d 450 (1968), *rev'g on dissent below* 100 *N.J.Super.* 67, 241 *A.*2d 237 (App.Div.1967); *Moschou v. DeRosa*, 192 *N.J.Super.* 463, 466–67, 471 *A.*2d 54 (App.Div.1984); *see also Crispin v. Volkswagenwerk, A.G.*, 96 *N.J.* 336, 345, 476 *A.*2d 250 (1984) (dismissal with prejudice for failure to timely issue summons proper "only when no lesser sanction will erase the prejudice suffered by the non-delinquent party"). The principal concern in determining prejudice is impairment of the defendant's ability to present a defense on the merits. *Crispin, supra*, 96 *N.J.* at 345, 476 *A.*2d 250; *Moschou, supra*, 192 *N.J.Super.* at 466–67, 471 *A.*2d 54. Prejudice occurs, for example, when defendants are disadvantaged in their ability to prepare a case as a result of disposing of necessary records after a limitations-of-actions period has run. *See Moschou, supra*, 192 *N.J.Super.* at 466–67, 471 *A.*2d 54.

 At most, the State was fifty-four days late in issuing a summons against claimant. Because the State encountered difficulty in filing its complaint, it is not clear when the ten-day

period to issue the summons began. Resolution of that issue is immaterial to our disposition. Thus, we assume, without deciding, that the earlier date is controlling. A fifty-four-day delay is not so prejudicial as to require the trial court to dismiss the complaint. *See McLaughlin, supra,* 51 *N.J.* at 411, 241 *A.*2d 450 (upholding trial court's decision not to dismiss complaint when plaintiff .did not issue summons for over three and one-half years after complaint filed).

■ Deprivation of the use of his car has not impaired claimant's ability to defend the forfeiture action. Any such deprivation, moreover, is irrelevant. The seizure and retention of the car was lawful under *N.J.S.A.* 2C:64-4a as a means of obtaining evidence for use in the pending criminal proceeding. *See Warden v. Hayden,* 387 *U.S.* 294, 301 n. 8, 87 *S.Ct.* 1642, 1648 n. 8, 18 *L.Ed.*2d 782, 788 n. 8 (1967); *State v. Bisaccia,* 45 *N.J.* 504, 519, 213 *A.*2d 185 (1965). *N.J.S.A.* 2C:64-4a provides: "Nothing in this chapter shall impair the right of the State to retain evidence pending a criminal prosecution."

The Appellate Division applied a "strict construction" to *Rule* 4:37-2(a), relying in part on *State v. 1979 Pontiac Trans Am,* 98 *N.J.* 474, 487 *A.*2d 722 (1985). 230 *N.J.Super.* at 461, 553 *A.*2d 869. In *1979 Pontiac Trans Am,* we restated the familiar principle that because forfeitures are disfavored in the law, forfeiture statutes should be strictly construed. 98 *N.J.* at 481, 487 *A.*2d 722. Strict construction, however, does not mean that courts can ignore the plain language of a statute or Rule. As we stated in *1979 Pontiac Trans Am,* forfeiture statutes should be strictly construed only to the extent such a construction is "consistent with the fair principles of interpretation." *Id.* at 481, 487 *A.*2d 722. *Rule* 4:37-2(a) cannot be fairly construed to require dismissal in forfeiture proceedings. The Rule expressly places discretion to dismiss in the trial court. Here, the trial court declined to exercise that discretion.

■■ We likewise find unjustified the Appellate Division's dismissal of the complaint because of due-process considera-

tions. The State may seize property before affording the owner notice and an opportunity for a hearing. *Calero–Toledo v. Pearson Yacht Leasing Co.*, 416 *U.S.* 663, 677, 94 *S.Ct.* 2080, 2088–89, 40 *L.Ed.*2d 452, 464 (1974). Legally-seized property may be retained as long as the retention is reasonably related to the government's legitimate need for it. *See United States v. Premises known as 608 Taylor Ave.*, 584 *F.*2d 1297, 1302–04 (3d Cir.1978). In *United States v. $8,850*, the Supreme Court discussed four factors to be weighed in determining whether delay in the initiation of a forfeiture action violates due-process rights: (1) the length of the delay; (2) the reasons for the delay; (3) whether the claimant has asserted his right to a hearing; and (4) whether the claimant has been prejudiced by the delay. 461 *U.S.* 555, 564, 103 *S.Ct.* 2005, 2012, 76 *L.Ed.*2d 143, 152 (1983). Under that test, courts must balance "the interests of the claimant and the Government to assess whether the basic due process requirement of fairness has been satisfied in a particular case." *Id.* at 565, 103 *S.Ct.* at 2012, 76 *L.Ed.*2d at 152. There is "no obvious bright line dictating when a post-seizure hearing must occur." *Id.* at 562, 103 *S.Ct.* at 2011, 76 *L.Ed.*2d at 151.

■ The Appellate Division determined that the "prosecutor's reliance" on *$8,850* was "misplaced." 230 *N.J.Super.* at 460, 553 *A.*2d 869. It distinguished that case because there claimant received notice that his property was subject to forfeiture within several days of the seizure. *Ibid.* By comparison, Matarazzo "received his first notice of possible forfeiture 156 days after seizure." *Ibid.* Because of the factual differences between the two cases, the Appellate Division deemed inapplicable the test set forth in *$8,850*. Notwithstanding those factual differences, we believe that *$8,850* controls. Provided that the State's possession of seized property is lawful, prompt notice that property is subject to forfeiture, although desirable, is not constitutionally mandated. The purpose of notice of forfeiture is to permit the owner to present objections. Notice is adequate if it is given before the forfeiture hearing.

The "overarching factor" is length of the delay. 461 *U.S.* at 565, 103 *S.Ct.* at 2012, 76 *L.Ed.*2d at 153. Because they impose a lesser burden on the owner's right to possession, short delays are more justifiable than long ones. *Ibid.* "Closely related to the length of delay" is the second factor, the government's reason for delaying. *Ibid.* Short delays may be necessary to allow the government to decide whether it is going to institute forfeiture proceedings. *Id.* at 565, 103 *S.Ct.* at 2012–13, 76 *L.Ed.*2d at 153. The government may also need to delay civil forfeiture proceedings to prevent interference with a pending criminal proceeding. *Id.* at 567, 103 *S.Ct.* at 2013, 76 *L.Ed.*2d at 154.

Whether the owner of the seized property asserted his right to a judicial hearing is also an important factor. Claimants can file replevin actions to seek the return of seized property. *Id.* at 569, 103 *S.Ct.* at 2014, 76 *L.Ed.*2d at 155; *Ben Ali v. Towe*, 30 *N.J.Super.* 19, 103 *A.*2d 158 (App.Div.1954); see *R.* 4:61–1 to –5 (Rules governing replevin actions). Similarly, if the seizure itself was improper, the seized property can be retrieved under the Rules of Criminal Procedure. *Fed.R.Crim.P.* 41(e) (federal); *R.* 3:5–7 (New Jersey); see *Lopez v. New Jersey Bell Tel. Co.*, 51 *N.J.* 362, 371, 240 *A.*2d 670 (1968). Because of the availability of procedures to recover seized property, a claimant's inaction may weigh against a claim that his or her due-process rights have been violated. *$8,850, supra,* 461 *U.S.* at 569, 103 *S.Ct.* at 2014, 76 *L.Ed.*2d at 155.

The last factor, prejudice, is measured by the same standard applied under *Rule* 4:37–2(a): whether the claimant's ability to defend against forfeiture has been impaired. *$8,850, supra,* 461 *U.S.* at 569, 103 *S.Ct.* at 2014, 76 *L.Ed.*2d at 155.

■ Balancing the four factors, we find that claimant was not deprived of his right to due process. For purposes of due process, delays in initiating forfeiture proceedings are measured from the time that the property is seized. In this case, the length of the deprivation was five months and one week, a

period of time substantially shorter than the eighteen months that was found not to violate due-process rights in *$8,850*. *Id.* at 569, 103 *S.Ct.* at 2015, 76 *L.Ed.*2d at 155. The reason for the delay was that the State wanted to use the car as evidence in the criminal proceeding. Thus, the State was justified in delaying the forfeiture proceeding while the criminal proceeding was pending. Claimant never requested a judicial hearing. His only step to regain possession of the Subaru was to make several informal requests to the prosecutor's office similar to those found to be inadequate in *$8,850*. *Id.* at 569, 103 *S.Ct.* at 2014, 76 *L.Ed.*2d at 155. As previously indicated, the record is devoid of relevant evidence indicating that claimant has been prejudiced in his ability to present a defense in the forfeiture proceeding.

Consequently, we conclude that the Appellate Division erred in ruling that the complaint should be dismissed for failure to issue a summons within ten days.

### III

We now turn to the applicability of the forfeiture statute to claimant's car. The trial court dismissed the State's complaint because it concluded that the claimant's use of his car did not fit within the definition of non-*prima facie* contraband in *N.J.S.A.* 2C:64–1a(2). The Appellate Division determined, however, that the statutory language was broad enough to encompass an automobile used to kill someone because of the driver's reckless conduct. *N.J.S.A.* 2C:64–1a(2) provides:

a. Any interest in the following shall be subject to forfeiture and no property right shall exist in them:

(2) All property which has been, or is intended to be, utilized in furtherance of an unlawful activity, including, but not limited to, conveyances intended to facilitate the perpetration of illegal acts, or buildings or premises maintained for the purpose of committing offenses against the State.

Here, the critical issue is whether claimant's car was "utilized in furtherance of an unlawful activity." That clause is not defined in the statute, and the legislative history sheds no light

on its meaning. By its terms, the clause does not require proof of intent to use for an unlawful purpose. "Furtherance" is a familiar term, which means "a helping forward," *Webster's Third New International Dictionary* 924 (1976), or an "[a]ct of furthering, helping forward, promotion, advancement or progress," *Black's Law Dictionary* 608 (5th ed. 1979). As the Appellate Division perceived, all that is required is "a direct causal relationship between the use of the property and the unlawful activity." 230 *N.J.Super.* at 457, 553 *A.*2d 869. It suffices if the reckless operation of defendant's car was the direct cause of the victim's death.

Although forfeiture statutes are to be strictly construed, *1979 Pontiac Trans Am, supra,* 98 *N.J.* at 481, 487 *A.*2d 722, the language of *N.J.S.A.* 2C:64–1a(2) is too clear to be denied. Our concerns about innocent owners, which we expressed in *1979 Pontiac Trans Am,* are now treated in *N.J.S.A.* 2C:64–5, which provides that seized property

shall not be subject to forfeiture if the owner of the property establishes by a preponderance of the evidence that the owner was not involved in or aware of the unlawful activity and that the owner had done all that could reasonably be expected to prevent the proscribed use of the property by an agent * * *.

That defense demonstrates legislative awareness of the need to limit the reach of the statute against "innocent owners who did all they reasonably could to prevent misuse of their property." *1979 Pontiac Trans Am, supra,* 98 *N.J.* at 452, 487 *A.*2d 722.

The Appellate Division summarized the applicability of the statute:

Here, causing death by auto depended on using the car in a reckless manner. *N.J.S.A.* 2C:2–3a(1) provides that "conduct is the cause of a result when it is an antecedent but for which the result in question would not have occurred." It was the car which its owner operated allegedly in a reckless manner while drag racing. Similarly, it was the car which allegedly struck and killed the victim * * *. We conclude that if the car was driven recklessly as defined in *N.J.S.A.* 2C:2–2b(3) and caused the death of Stephen Janczewsky as required by *N.J.S.A.* 2C:11–5, and as alleged in the complaint, then the car is subject to the forfeiture provisions of *N.J.S.A.* 2C:64–1a(2). Consequently, the complaint was improperly dismissed for failure to state a cause of action.

[230 *N.J.Super.* at 457–58, 553 *A.*2d 869.]

The judgment of the Appellate Division is affirmed in part, reversed in part, and the matter is remanded to the Law Division.

*For affirmance in part; reversal in part; and remandment*—Chief Justice WILENTZ and Justices POLLOCK, CLIFFORD, HANDLER, O'HERN, GARIBALDI, and STEIN—7.

*Opposed*—None.