972 F.2d 347
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
LSA LEASING CORPORATION, Plaintiff-Appellant,
v.
PHIPPS CONSTRUCTION COMPANY, Defendant-Appellee.
 No. 91-6411.
 United States Court of Appeals, Sixth Circuit.
 July 22, 1992.
 
 Before MILBURN and ALAN E. NORRIS, Circuit Judges, and ENGEL, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant LSA Leasing Corporation ("LSA") appeals the order of the district court which affirmed the bankruptcy court's decision holding that LSA's lien on the debtor's lowboy trailer was avoidable by the trustee and that the transfer of a security interest in two bulldozers to LSA constituted a voidable preference. On appeal, the principal issues presented are (1) whether the county clerk's error in failing to record LSA's lien on the lowboy trailer's certificate of title renders the lien unperfected and subject to a bankruptcy trustee's avoidance powers under 11 U.S.C. § 544(a), and (2) whether an interval of more than ten days between the attachment and perfection of a security interest defeats the contemporaneity requirement of a "substantially contemporaneous exchange" under 11 U.S.C. § 547(c)(1) and thus exposes the transfer of property to avoidance by a bankruptcy trustee as a preference. For the reasons that follow, we affirm.
 
 I.
 
 2
 The essential facts are stipulated and are not in dispute. The debtor, Phipps Construction Company ("Phipps"), was a contractor engaged in road construction. In January 1988, it purchased a lowboy trailer and financed its purchase through LSA in Adair County, Kentucky. The agreements between Phipps and LSA called for LSA to have a lien on the trailer, and on January 22, 1988, LSA filed a financing statement showing its security interest in the trailer at the office of the Adair County Clerk. Also filed with the Adair County Clerk was an application for title registration which evidenced the sale of the trailer to Phipps and noted LSA as the first lienholder. On March 11, 1988, the Adair County Clerk issued a certificate of title on the trailer to Phipps but failed to note LSA's lien on the title.
 
 
 3
 In a different transaction in April 1989, Phipps purchased two bulldozers from another construction company and initially financed these purchases through First National Bank of Manchester, Kentucky. One month later, Phipps refinanced the bulldozer purchase through LSA, and on May 26 or 27, 1989, LSA wired $95,000 to First National Bank of Manchester to pay off Phipps' loan at that bank. On June 2, 1989, LSA tendered a UCC-1 financing statement and its check in the amount of $10.50 to the Adair County Clerk. The clerk originally accepted this tender and date stamped the financing statement June 3, 1989. However, the clerk later cancelled the filing stamp and returned the financing statement and check to LSA because additional filing fees were required. LSA issued another check in the amount of $16.50 and tendered it to the clerk on June 9, 1989. On June 12, 1989, approximately seventeen days following the attachment of the security interest, the financing statement was accepted for filing by the Adair County Clerk.
 
 
 4
 Phipps filed a petition for Chapter 11 relief on August 24, 1989. Initially, Phipps, operating as a debtor-in-possession, filed an adversary proceeding seeking to avoid LSA's security interest in the trailer as unperfected and the transfer of the security interest in the bulldozers as preferential. The case was later converted to a liquidation case under Chapter 7 of the Bankruptcy Code, and a trustee was appointed who continued the action on behalf of the unsecured creditors.
 
 
 5
 The bankruptcy court held that LSA's security interest in the lowboy trailer was unperfected because no lien was noted on the certificate of title as required by Kentucky law. It also held that LSA's security interest in the bulldozers was not perfected within ten days of its attachment, that the transaction did not represent a "contemporaneous exchange" under 11 U.S.C. § 547(c)(1)(B), and, accordingly, that the trustee could avoid the transfer as a preference. LSA appealed this decision to the district court, and on November 6, 1991, the district court entered an order affirming the bankruptcy court's decision. This timely appeal followed.
 
 II.
 A.
 
 6
 The bankruptcy court made findings of ultimate fact and drew conclusions of law regarding the legal rules governing perfection of security interests and related matters. This court reviews conclusions of law and findings of ultimate fact de novo. Whitney v. Brown, 882 F.2d 1068, 1971 (6th Cir.1989); Loudermill v. Cleveland Bd. of Educ., 844 F.2d F.2d 304, 308 (6th Cir.), cert. denied, 488 U.S. 941 (1988); Taylor and Gaskin, Inc. v. Chris-Craft Indus., 732 F.2d 1273, 1277 (6th Cir.1984).
 
 
 7
 The bankruptcy court held that LSA did not have a perfected lien on the lowboy trailer because its lien was not noted on the certificate of title as required by Kentucky law. LSA agrees that the sole means of perfecting a security interest in a vehicle is by notation of a lien on the vehicle's certificate of title. KRS § 186A.190(1), (2). It argues, however, that, but for the county clerk's unprovoked mistake, LSA's lien would have appeared on the certificate of title. Thus, LSA contends that it should not suffer from the clerk's error, and it cites several cases, none of them applying Kentucky law, which hold in general that a secured party who has properly completed and filed the documents necessary to obtain a security interest in a vehicle does not bear the risk that the clerk will not properly note the lien on the certificate of title.
 
 
 8
 Unfortunately for LSA, the Kentucky courts have decided that a clerk's failure to place a secured party's lien on a certificate of title renders the lien unenforceable as against third persons without actual knowledge of it. In General Motors Acceptance Corp. v. Hodge, 485 S.W.2d 894, 896 (Ky.Ct.App.1972), the court found itself
 
 
 9
 squarely faced with the question of whom should the law protect--the purchaser without notice or the lien holder, when the Act requires the clerk to place the notice of the lien on the registration receipt and does not provide for the legal consequences when he fails to do so?
 
 
 10
 The court held that an unnoted lien was unenforceable against a purchaser without notice of the existence of the lien.
 
 
 11
 Because matters concerning the validity, nature, and priority of liens are governed by the law of the state in which the property is situated, Lewis v. Manufacturers Nat'l Bank of Detroit, 364 U.S. 603 (1961), the bankruptcy court properly applied Hodge. It then applied 11 U.S.C. § 544(a)(1) which provides:
 
 
 12
 (a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is avoidable by--
 
 
 13
 (1) A creditor that extends credit to the debtor at the time of the commencement of the case and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists....
 
 
 14
 Because the trustee by law acquires all the rights under state law of a hypothetical creditor with a lien on all the property of the debtor, he is in a position similar to the purchaser without notice in Hodge. The bankruptcy court correctly concluded that the trustee could avoid LSA's security interest in the trailer because the security interest was unperfected under Kentucky law.
 
 
 15
 LSA cites authority from states other than Kentucky in which it has been held that a clerk's failure to note a lien on a certificate of title did not render the security interest unperfected, provided the secured party complied with the filing requirements and did not contribute to the error. The facts in Hodge, however, show that the rule in Kentucky is different.
 
 B.
 
 16
 LSA argues that the bankruptcy court erred in permitting the trustee to avoid LSA's security interest in the bulldozers as a voidable preference under 11 U.S.C. § 547(b). In the bankruptcy court, LSA argued "that the Trustee may not avoid this lien as it falls within the exception to avoidance created by 11 U.S.C. § 547(c)(1) ...," Trial Brief of LSA Leasing Corp., R. 15 at 7. Section 547(c)(1) excepts from the trustee's avoidance powers transfers that are part of a "substantially contemporaneous exchange."
 
 
 17
 In support of this position, LSA argued below that "[t]he exchange occurred and perfection was made by the filing of a financial statement with the Adair County Clerk on June 12, 1989." Id. at 8 (emphasis added). The bankruptcy court, however, found that the security interest attached to the property on May 26 or May 27, 1989, when LSA wire transferred $95,000 to First National Bank of Manchester to pay off Phipps' original purchase money loan at that bank.
 
 
 18
 The bankruptcy court held that perfection of the security interest occurred when the Adair County Clerk accepted the financing statement for filing on June 12, 1989, seventeen or eighteen days following the attachment of the security interest. Relying on In re Arnett, 731 F.2d 358 (6th Cir.1984), the bankruptcy court held that a transfer could not be considered a "contemporaneous exchange" within the meaning of section 547(c) where perfection of the security interest was delayed more than ten days. Because the transfer was not part of a contemporaneous exchange, it could be avoided by the trustee.
 
 
 19
 LSA appealed the bankruptcy court's decision to the district court. There LSA changed its position and argued that, although LSA gave value on May 26, 1989, its security interest was perfected on June 3, 1989 (within ten days) when LSA tendered a UCC-1 form with its check for filing fees in the amount of $10.50 to the Adair County Clerk. The clerk at first accepted the tender but later canceled acceptance and returned the UCC-1 and the check to LSA for insufficient filing fees. On June 9, 1989, LSA retendered the UCC-1 and a check for $16.50, and on June 12, 1989, the clerk accepted the filing.
 
 
 20
 Before the district court, LSA argued that, despite its failure to tender the proper filing fee, "the Clerk should simply have requested the additional filing fee from LSA ...," J.A. 62, and that perfection should be deemed to have occurred on June 3, 1989, i.e., within ten days of the attachment of the security interest. This argument was obviously designed to avoid the rule of In re Arnett, which would otherwise compel the finding that the transfer in this case was not a part of a contemporaneous exchange and thus was subject to avoidance as a preference.
 
 
 21
 The district court did not mention this argument, but merely affirmed on the basis of the bankruptcy court's opinion. This was arguably proper because LSA had raised new arguments in its brief in the district court. Although LSA admitted in the bankruptcy court that perfection occurred on June 12, 1989, it argued to the district court that perfection occurred on June 3, 1989.
 
 
 22
 In this court, LSA now argues for the first time that its tender of $10.50 to the clerk on June 2, 1989, was the correct filing fee, that the clerk's rejection of LSA's UCC-1 was "wrongful," and that LSA's security interest should be deemed to have been perfected on June 3, 1989. See Matter of Bufkin Bros., Inc., 757 F.2d 1573, 1579 (5th Cir.1985) (under Mississippi law, filing statement deemed properly filed when presented to the clerk with proper filing fees); Mikulicka v. Baer, 446 A.2d 555 (N.J.Super.1982). LSA argues that "[i]t is clear that LSA perfected its interest in the bulldozers on June 3, 1989, when it presented its financing statement with the appropriate filing fee to the Adair County Clerk." Brief of Appellant at 11 (emphasis added). Thus, LSA now argues for the first time that, because it tendered the correct filing fee on June 2, 1989, its security interest should be deemed perfected by operation of law on that date.
 
 
 23
 This argument was not presented to the lower courts in this case. Indeed, LSA admitted in the bankruptcy court that perfection occurred on June 12, 1989, and it conceded in the district court that it had not tendered the appropriate filing fees to the clerk. Thus, neither of the lower courts have had the opportunity to address the new issues raised by LSA, i.e., whether LSA tendered the correct filing fee on June 2, 1989. This is important because LSA's argument depends on its resolution: only if LSA tendered the proper fee can the filing requirements have been met.
 
 
 24
 This court has repeatedly held that a litigant may not advance new theories or raise new issues for the first time on appeal.
 
 
 25
 This court will not decide issues or claims not litigated before the district court ... [Attempts to raise new issues are] offensive to the requirement that on appeal "we review the case presented to the district court rather than a better case fashioned after the district court's order." Adams v. James, 784 F.2d 1077, 1080 (11th Cir.1986).
 
 
 26
 White v. Anchor Motor Freight, Inc., 899 F.2d 555, 559 (6th Cir.1990).
 
 
 27
 LSA appears to deploy a new argument with each step up the appellate ladder. The arguments presented to this court were not considered below, and this court should not address them for the first time on appeal.[1]
 
 III.
 
 28
 For the reasons stated, the judgment of the district court is AFFIRMED.
 
 
 
 [1]
 Since the original though defective certificate of title on the lowboy trailer was issued on March 11, 1988, LSA might have but apparently did not seek from the bankruptcy court leave to be allowed to complete the perfection of its security interest, see In re Griggs, No. 91-5794 (6th Cir. filed May 18, 1992). Whether Ky.Rev.Stat. 186A.197(1) can provide relief here and whether there may be post-judgment relief available to it, we are not called upon to decide because LSA did not request this protection and it is evident that the statute contemplates that someone must ask for and obtain a corrected statement before there is a perfected filing