261 N.J. Super. 672 (1993)
619 A.2d 683
JOYCE WHITE AND ROBERT WHITE, PLAINTIFFS-APPELLANTS,
v.
STEVEN KATZ, D.D.S., DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted January 5, 1993.
Decided February 5, 1993.
*674 Before Judges MICHELS, BILDER and WALLACE.
Smith & Primas, attorneys for appellants (Marcia Allen-Aston, of counsel; Lewis P. Hannah, of the Pennsylvania Bar, on the brief).
Horn, Goldberg, Gorny, Daniels, Paarz, Plackter & Weiss, attorneys for respondent (Mary Louise Ambrose, of counsel and on the brief).
The opinion of the court was delivered by MICHELS, P.J.A.D.
Plaintiffs Joyce White and Robert White appeal from a summary judgment of the Law Division that dismissed their dental malpractice action against defendant Steven Katz, D.D.S. on the ground that the action was barred by the statute of limitations.
Plaintiff Joyce White treated with defendant on four separate occasions, beginning some time in January of 1989. Defendant indicated to plaintiff upon her first visit that she had some cavities, and that her teeth needed to be cleaned and scaled. Pursuant to this evaluation, a treatment regimen was commenced. According to plaintiff, the initial three visits with defendant entailed the cleaning and scaling of her teeth, which *675 was performed by an associate or assistant of defendant. Thereafter, "follow-up dental work" was to be performed, which involved the matter of plaintiff's cavities.
The fourth visit, which took place on March 30, 1989, is the one from which the allegations of dental malpractice arise. Plaintiff was experiencing pain as a result of a cavity on one of her rear molars. Defendant indicated that he could either fill the cavity or remove the tooth. When plaintiff asked whether removal was necessary, defendant responded that the tooth in question served no purpose. In light of this, plaintiff instructed defendant to "do whatever he felt was best." Defendant elected to extract the tooth. He did not, however, take an X-ray of the tooth prior to beginning the attempted extraction. Instead, he simply gave plaintiff an injection of anesthesia, and tried to remove the tooth. It was plaintiff's estimation that defendant attempted unsuccessfully to extract the tooth for a total time of "twenty to thirty-five minutes." Plaintiff was in pain throughout, and at times was moaning from it. Dr. Katz was "pulling" and "twisting" the tooth, and he expressed to his assistant a disbelief that it would not come out.
At some point, defendant stopped the procedure and ordered an X-ray of the tooth. The X-ray revealed that there was a hook on the root of the tooth, but defendant indicated that he was still going to try to pull it. After using a pick to pry the gum away from the tooth, defendant renewed his efforts at extraction. Eventually, the pain became unbearable for plaintiff, and she was forced to grab defendant's hand and tell him to stop.
Immediately after concluding the attempted extraction, defendant referred plaintiff to Dr. Feinstein, an oral surgeon. Plaintiff went to see Dr. Feinstein the very same day. Upon arriving at his office, plaintiff noted that her initial dose of anesthesia, which had been given by defendant, was starting to wear off. Consequently, she was experiencing pain in "what felt like the whole side of [her] face." Dr. Feinstein proceeded *676 to view the X-ray that defendant had sent over with the patient, and he stated that he "couldn't understand why [defendant] wanted to pull the tooth." Dr. Feinstein explained to plaintiff, and showed her on the X-ray, that the root of the tooth was curled underneath the jaw bone, and that it was sitting on a nerve. In light of this, and because of the fact that the tooth "only had a spot on it," Dr. Feinstein recommended that plaintiff not have the tooth pulled. Dr. Feinstein then placed stitches in plaintiff's mouth, in order to repair the area where defendant had pulled the gum away from the tooth, and released her.
Plaintiff later returned to Dr. Feinstein on April 5, 1989 to have the stitches removed. At this time, plaintiff indicated to Dr. Feinstein that she was having "funny feelings" in her face. Specifically, she noted that she was experiencing "twitching," "jerking," "numbness" and "pains." Dr. Feinstein opined that these problems were only temporary, and would probably go away. Despite the doctor's optimism, plaintiff eventually realized that her problems were not temporary in nature. In fact, in 1991 she was still experiencing "tingling sensation[s]" and "numbness" in her mouth. As a result, plaintiffs decided to institute a dental malpractice action against defendant.
On March 28, 1991, plaintiffs attempted to file a complaint with the Clerk of the Superior Court by filing with the Atlantic County Clerk's Office. The complaint was received in the Office of the Superior Court by the Deputy Clerk of the Superior Court in Atlantic County on March 28, 1991. However, discerning that the complaint had not been prepared or signed by a New Jersey attorney, the clerk declined to file the complaint, and, in fact, returned it to Lewis P. Hannah, Esq., the Pennsylvania attorney who had forwarded it for filing. Thereafter, on April 5, 1991, an identical complaint was submitted on behalf of plaintiffs. This complaint bore the signature of a New Jersey attorney and was immediately marked filed by the Deputy Clerk of the Superior Court, Atlantic County.
*677 After issue was joined and discovery completed, defendant moved for summary judgment, contending that the applicable two-year statute of limitations had run on March 30, 1991, prior to plaintiffs' proper filing of their complaint. Plaintiffs argued that Joyce White had not become aware of her potential claim against defendant on March 30, 1989, but instead on April 5, 1989, when she had returned to Dr. Feinstein's office because of her discomforts. Additionally, plaintiffs argued in the alternative that, even if the trial court determined that the statute of limitations did commence running on March 30, 1989, the filing date of the original complaint, March 28, 1991, should be construed as the effective date of filing pursuant to R. 1:5-6(c). This rule allows for a dating back exception, under certain circumstances, which plaintiffs claimed to have met. Thus, they maintained that they were entitled to have the date of the original complaint control for limitations purposes.
Following argument, the trial court granted summary judgment, holding that plaintiff Joyce White was aware on March 30, 1989 that she "had a problem resulting from action taken by [defendant]." More precisely, the trial court concluded that this plaintiff was aware of both the injury and the defendant's apparent fault on that date. The trial court noted additionally that the fact that this plaintiff's problem had worsened by April 5, 1989 did not serve to "negate the pain and suspicions she had on [March 30, 1989]." Consequently, the trial court held that the two-year statute of limitations had run out on March 30, 1991, and thus, plaintiffs' claims were barred.
The trial court also rejected plaintiffs' alternative argument that the date of the original attempt at filing the complaint, March 28, 1991, should be viewed as the effective filing date under R. 1:5-6(c). The trial court noted that this rule provides, in part, that if a paper is presented for filing without payment of the filing fee or attachment of a Case Information Statement, it shall be returned as not filed, but may be reinstated, to the original date of filing, if properly refiled within ten days. The trial court found that the application of this rule to the *678 situation at bar  where the nonconformity of the papers was due to the fact that the attorney filing them was not licensed to practice in New Jersey  would create a direct conflict with R. 1:21-1, which governs who may practice law in the courts of New Jersey. In light of this, and so as not to render R. 1:21-1 "nugatory," the trial court concluded that R. 1:21-1 must take precedence, and R. 1:5-6(c) should not be applied in this case. This appeal followed.
Plaintiffs seek a reversal of the judgment, and a reinstatement of their complaint. They contend generally that the trial court erred (1) in dismissing the complaint without conducting a Lopez[1] hearing, because issues of credibility were involved; (2) in granting summary judgment in favor of defendant because knowledge of pain does not constitute knowledge of an injury caused by the fault of another pursuant to the discovery rule, and (3) in only considering one line of plaintiff's deposition since defense counsel suggested all dates to her when she was confused and extremely nervous. However, plaintiffs do not renew on appeal the argument made before the trial court that the filing date of their initial complaint should have been construed as the effective filing date pursuant to R. 1:5-6(c).
Upon careful reading of R. 1:5-6(c), it is apparent that the trial court's focus solely on the dating back provisions of the rule, and its failure to acknowledge the rule's predominant plain language regarding nonconforming papers, was erroneous. Furthermore, this error was "of such a nature as to have been clearly capable of producing an unjust result...." R. 2:10-2. Particularly, it resulted in the improper dismissal of an apparently meritorious claim. Therefore, notwithstanding plaintiffs' failure to raise this issue on appeal, the interests of justice require that we now notice and address this issue.
As noted previously, plaintiffs' original complaint was forwarded to the Clerk of the Superior Court in Atlantic County on *679 March 28, 1991, within the two-year limitations period when the earliest possible date of accrual of the cause of action, March 30, 1989, is assumed. However, instead of simply filing this complaint and notifying the person who had forwarded it of any problems or nonconformities contained therein, the clerk refused to file it. In fact, he returned the complaint unfiled, but bearing the received date of March 28, 1991, to the Pennsylvania-based attorney who had submitted it.
In light of the clear and explicit language of R. 1:5-6(c), the clerk's act of returning a complaint which he deemed to be nonconforming and unacceptable was entirely erroneous. It is well-settled that "the clerk's filing [of papers] is a ministerial rather than discretionary act," and thus "the clerk is required to file [all] papers presented to him if accompanied by the [appropriate materials]." Pressler, Current N.J. Court Rules, comment 3 on R. 1:5-6 at 49 (1993).
Specifically, R. 1:5-6(c) provides:
Nonconforming Papers. The clerk shall file all papers presented for filing and may notify the person filing if such papers do not conform to these rules. If, however, a paper is presented for filing without the Case Information Statement required by R. 4:5-1 or without payment of the required filing fee, the clerk shall return the same stamped "Received but not Filed (date)" with notice that if the paper is retransmitted together with the Case Information Statement or filing fee, as appropriate, within ten days after the receipt date stamped thereon, filing will be deemed to have been made on said date. [Emphasis added].
Furthermore, the comment to this rule provides in pertinent part:
3. Paragraph (c). This paragraph of the rule, as adopted as part of the 1969 revision, made the practice change, except in the Appellate Division, of requiring the clerk to file all papers received by him for that purpose even if they are nonconforming. The theory is that the clerk should, with respect to filing, act ministerially, and not, by returning nonconforming papers as had formerly been authorized, subject a party to the risks which may attend untimely filing. It is rather the party who should bear the responsibility for whatever risks may result from a nonconforming paper. It is anticipated, however, that the clerks will continue to notify attorneys of nonconformances which come to their attention so they may be corrected without affecting the filing date. Note that other rules now directing the clerk to return, without filing, papers which do not conform in a particular manner were also amended to eliminate that *680 provision. See, e.g., Comment 4 to R. 4:6-1 (formerly R.R. 4:12-1(e)) and R. 4:100 (formerly R.R. 4:120-1). The revised rule, however, does recognize that clerks cannot be required to accept papers for filing without payment of the required filing fee. The second sentence of paragraph (c) was therefore added as a technique by which the timeliness of the filing of such papers is protected provided the fee is transmitted with a retransmission of the papers within ten days after their return to the party presenting them. Since the original filing date is protected if a fee which should have accompanied the filing is transmitted within 10 days, a fortiori, the filing date is protected when the document is accompanied not only by the fee but also by a direction to charge the filer's account. See State v. One 1986 Subaru, 230 N.J. Super. 451, 458 [553 A.2d 869] (App.Div. 1989), reversed in part on other grounds, 120 N.J. 310 [576 A.2d 859] (1990). So also is the filing date protected when a pro se litigant claiming indigency presents the pleading for filing unaccompanied by the fee and then, within the 10 days provided for by the rule, presents the clerk with an Assignment Judge's order waiving the fee. Novack v. Chait, 241 N.J. Super. 614 [575 A.2d 908] (App.Div. 1990).
This provision of the rule was amended, effective April 1, 1991, to place the case information statement required by R. 4:5-1 on the same footing as the filing fee. Thus papers unaccompanied by a required case information statement are not eligible for filing but the original filing date, as in the case of the unpaid fee, may be preserved. [Pressler, supra, comment 3 on R. 1:5-6 at 48-49].
Thus, R. 1:5-6(c) clearly mandates that the clerk file all papers which are received, even those that are nonconforming. Only in limited circumstances, where the papers are not accompanied by the appropriate filing fee or a required Case Information Statement, may the clerk return the submitted papers to their sender. However, even in such an instance, the clerk is to notify the sender that if the papers are retransmitted, together with the appropriate materials which were lacking, within ten days after the original stamped date of receipt, filing will be deemed to have been made on the earlier date. Except in these limited circumstances, which are not present in this case, the clerk is required to file all papers which are received. The clear purpose behind this change from the prior rule, which had authorized the return of nonconforming papers by the clerk, was to protect the filing party from the "risks which may attend untimely filing." Pressler, supra, comment 3 on R. 1:5-6 at 48. In this matter, these risks became abundantly manifest, as the clerk's action served to deprive plaintiffs of their *681 day in court on a seemingly valid claim. Thus, it is apparent from the language of R. 1:5-6(c), that the trial court's error in failing to recognize March 28, 1991, the date that plaintiffs' original complaint was received by the clerk, as the effective date of filing was plain error, and requires a reversal. The limited case law on this subject commands the same result.
When addressing the issue of what constitutes the proper "filing" of papers, we have instructed that:
The rules of court define "filing" circuitously. R. 1:5-6(b) specifies the place at which and the official with whom filing is to be accomplished. R. 1:5-6(c) requires the clerk to "file all papers presented to him for filing" unless unaccompanied by the filing fee. These provisions imply that filing consists of two actions: first, the presentation of the document to the clerk and, second, the clerk's appropriate disposition of it. Despite, however, the implication that a completed filing requires the proper disposition by the clerk as well as the presentation by the filer, our courts have consistently recognized that where the paper is timely presented by the filer, its filing cannot be defeated by any subsequent act of inadvertence, neglect or impropriety by the clerk. This proposition was enunciated over 50 years ago by Chancellor Walker in Mahnken v. Meltz, 97 N.J.L. 159, 161-162 [116 A. 794] (E. & A. 1921). The Chancellor had this instructive comment to make:
Originally "filing" consisted of putting writs and other exhibits in courts and offices upon a string or wire for safekeeping and ready reference. In modern usage it consists in placing in the custody of the proper official the paper to be filed, and while his duty undoubtedly requires his making a proper endorsement upon the paper so deposited, it is undoubtedly filed in theory and contemplation of law, when lodged with the proper officer. See 1 Bouv.L.Dic. (Rawle's rev.) 782. Of course, the clerk's failure to endorse a minute of the filing upon the paper lodged with him cannot operate to destroy the rights of the party so lodging it for filing. Any such doctrine would be intolerable.
And in construing R. 3:5-6, the predecessor of R.R. 4:5-6(a) which was the source of R. 1:5-6(b), the Supreme Court, relying on Mahnken v. Meltz, held that
In contemplation of law, a paper or pleading is considered as filed when delivered to the proper custodian and received by him to be kept on file. The endorsement of the clerk does not, according to the greater weight of authority, constitute a part of the filing but is merely evidence of that fact. [Poetz v. Mix, 7 N.J. 436, 442, 81 A.2d 741 (1951)].

See also In re Norrell, 139 N.J. Eq. 550, 554 [52 A.2d 407] (E. & A. 1947); Grubb v. J.C. Penney Co., Inc., 155 N.J. Super. 103, 105 [382 A.2d 405] (App.Div. 1978). And cf. Travelers Insurance Co. v. Gardner, 129 N.J.L. 159, 161 [28 A.2d 507] (E. & A. 1942); Mikulicka v. Baer, 184 N.J. Super. 457, 461-462 [446 A.2d 555] (Ch.Div. 1982). We are therefore satisfied that if the complaint here had *682 reached the Clerk's Office prior to the expiration of the statute of limitations, it would have to be deemed to have been timely filed. [Waite v. Doe, 204 N.J. Super. 632, 635-36, 499 A.2d 1038 (App.Div. 1985), certif. denied, 102 N.J. 398, 508 A.2d 256 (1986) (emphasis added)].
See also State v. One 1986 Subaru, 230 N.J. Super. 451, 458, 553 A.2d 869 (App.Div. 1989), reversed on other grounds, 120 N.J. 310, 576 A.2d 859 (1990) (acknowledging that R. 1:5-6(c) requires the clerk to file a complaint on the date it is received if accompanied by the filing fee or a direction to charge that fee to the filer's account).
Applying these principles here, it is clear that the clerk should have filed the original complaint forwarded by plaintiffs' Pennsylvania-based attorney on March 28, 1991. Thereafter, noticing that this attorney was not licensed to practice law in our state, the clerk should have informed him of this problem, and allowed it to be corrected without affecting the already established filing date of plaintiffs' claims. If, upon notification of this problem, it was not corrected, then plaintiffs could, and should, properly have been subjected to the risks that attach to it, but the filing date would remain unaffected. Unquestionably, R. 1:5-6(c) contemplates that, in all but the very limited circumstances provided for expressly in the rule, any action based on nonconformity which would serve to affect the vitality of a complaint after it has been received by the clerk must be instituted by the adversary and not the clerk. In this manner, the salutary goals of both R. 1:21-1 and R. 1:5-6(c) can be achieved, and neither rule will be rendered "nugatory."[2] In sum, the proper date of filing should have been deemed to be March 28, 1991. When this proper date of filing is applied, it is quite apparent that plaintiffs' claims in this matter were asserted in a timely fashion.
*683 Accordingly, the summary judgment under review is reversed. Plaintiffs' complaint is reinstated, and the matter is remanded to the trial court for further proceedings. In view of our decision, we need not, and do not, reach the specific issues raised by plaintiffs on appeal.
NOTES
[1] Lopez v. Swyer, 62 N.J. 267, 300 A.2d 563 (1973).
[2] Parenthetically, we note that this decision in no way serves to render R. 1:21-1, the rule which governs who may practice law in the courts of New Jersey, "nugatory," as the trial court had reasoned. The submission of papers by an unlicensed attorney in no way affords such a person the right to practice law in the courts of this state. Therefore, this spectre should not be allowed to preclude the filing of a party's complaint. Indeed, the express provisions of R. 1:5-6(c) serve to ensure that such a result will not obtain.