**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1648-18

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

RODNEY SMILEY, a/k/a
FOO SMILEY,

    Defendant-Appellant.

_____

Argued October 18, 2021 – Decided December 22, 2021

Before Judges Sumners and Vernoia.

On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Indictment No. 15-10-2434.

Michael Confusione argued the cause for appellant (Hegge & Confusione, LLC, attorneys; Michael Confusione, of counsel and on the brief).

Daniel Finkelstein, Deputy Attorney General, argued the cause for respondent (Andrew J. Bruck, Acting Attorney General, attorney; Daniel Finkelstein, of counsel and on the brief).

Appellant filed a pro se supplemental brief.

PER CURIAM

On October 7, 2015, an Atlantic County grand jury indicted defendant Rodney Smiley for first-degree murder, N.J.S.A. 2C:11-3(a)(1) or (2) (count one); first-degree conspiracy to commit murder, N.J.S.A. 2C:5-2 and N.J.S.A. 2C:11-3 (count two); second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a) (count three); second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b) (counts four and five); second-degree witness tampering, N.J.S.A. 2C:28-5(a)(1) (count six); and second-degree certain persons not to possess a weapon, N.J.S.A. 2C:39-7 (counts seven and eight).

Following a jury trial, defendant was convicted of first-degree witness tampering, one count of second-degree unlawful possession of a weapon, and one count of second-degree certain persons not to possess a weapon. The jury was deadlocked on first-degree conspiracy to commit murder, but found defendant not guilty of first-degree murder, one count of second-degree unlawful possession of a weapon, and one count of second-degree possession of a weapon for an unlawful purpose. He was sentenced to an aggregate thirty-five-year prison term with an eighteen-year parole disqualifier.

Defendant appeals arguing:

POINT I

THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE SEIZED BY POLICE.

POINT II

THE TRIAL COURT ERRED IN PERMITTING INTO EVIDENCE PRIOR INCONSISTENT STATEMENTS.

POINT III

REFERENCE TO DEFENDANT'S VEHICLE AS BEING "FAMILIAR" TO THE TESTIFYING DETECTIVE BELOW UNFAIRLY PREJUDICED DEFENDANT BEFORE THE JURY.

POINT IV

THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION FOR MISTRIAL DURING JURY DELIBERATIONS.

POINT V

THE SENTENCING COURT ERRED IN NOT GRANTING AN EVIDENTIARY HEARING IN LIGHT OF THE AT LEAST APPARENT CONFLICT OF INTEREST OF THE TRIAL JUDGE AT THE TIME OF DEFENDANT'S TRIAL.

POINT VI

DEFENDANT'S SENTENCE IS IMPROPER AND EXCESSIVE.

In a pro se supplemental brief, defendant argues:[1]

POINT I

ENHANCING APPELLANT['S] SENTENCE CONTRARY TO <u>APPRENDI V. NEW JERSEY</u>[2] [] ARBITRARILY ALLOW[ED] THE SENTENCING [BY] THE TRIAL JUDGE TO PERSONALLY IMPLEMENT PREJUDICIAL COMMENTS AND BIAS INFLUENCE BEFORE THE JURY [AND] DENIED A FUNDAMENTAL FAIR DUE PROCESS/EQUAL PROTECTION RIGHTS JURY TR[IA]L AND FAIR SENTENCING PHASE [] CONTRARY TO THE <u>U.S CONST.</u> 14TH AND 6TH AMEND. [], <u>N.J. CONST.</u> ART. 1, PARA. 10.

POINT II

THE PROSECUTOR COMMITTED PROSECUTORIAL MISCONDUCT IN GRAVE VIOLATION TO THE EVIDENCE ACT PURSUANT TO N.J.S.A. 2A:84A-33 ET SEQ. IN SECURING THE ALLEGED WITNESS INTO CUSTODY FOR TESTIMONY APPEARANCE IN APPELLANT'S TRIAL AND US[ING] [THE] SAME TO CREATE TAMPERING WITH WITNESS CHARGES AGAINST APPELLANT DESPITE THE INITIAL COERCI[VE] STATEMENT VASTLY DIFFER[ING] FROM HER SENTENCING PHASE STATEMENT.

---

[1]  We note that defendant's pro se arguments are indecipherable as they contain many grammatical errors and lack citations to the record.

[2]  530 U.S. 466 (2000).

A-1648-18

POINT III

APPELLANT WAS DENIED HIS STATE AND FEDERAL CONSTITUTIONAL RIGHTS TO EXHIBIT CONFRONTATION AND CROSS EXAMINATION RIGHTS, PURSUANT TO THE U.S. CONST. 6TH AMEND.[,] 14TH AMEND.[,] AND N.J. CONST. ART. 1, PARA. 10 WHEN THE TRIAL COURT AND THE PROSECUTOR KEPT PIECE-MEALING PREJUDICIAL COMMENTS/ LANGUAGE OF ORGANIZED CRIME THAT WAS GRAVELY CONTRARY TO ANY GRAND JURY FINDINGS, AS USED DURING SENTENCING.

POINT IV

THE CUMULATIVE ERRORS WARRANT A REVERSAL OF THE CURRENT CONVICTION AND SENTENCE BECAUSE THEY DENIED APPELLANT HIS STATE AND FEDERAL CONSITUTIONAL RIGHTS TO A FAIR JURY TRIAL WITH DUE PROCESS AND EQUAL PROTECTION CONTRARY TO HIS U.S. CONST. 14TH AND 6TH AMEND[S]. AND N.J. CONST. ART. 1[,] PARA 10.

We reject the entirety of defendant's arguments and affirm.

I

On September 6, 2012, Jose Ortiz was shot and killed in Atlantic City. Three or four people wearing black clothes and masks were observed in a black vehicle and they fired at least ten shots before driving away.

The ensuing Atlantic City police investigation located twenty-nine shell casings at the shooting scene; a ballistics expert later determined they were fired from three guns. A surveillance camera video depicted a black vehicle, later identified as owned by defendant's then-girlfriend, Mercedes Camarota, leaving the scene of the shooting. According to cell phone records, defendant, who had borrowed the vehicle that day, was within a mile of the shooting. Police located the vehicle, in which defendant's fingerprints were found, approximately a mile from the shooting.

On September 7, police searched the vehicle after obtaining a search warrant. No contraband was found in the vehicle before the warrant's ten-day expiration date. See R. 3:5-5. The police did not return the vehicle to Camarota. While the vehicle was being detained, the police communicated with Camarota, who did not demand its return and revealed that a handgun was concealed in the vehicle. The police kept the vehicle for forty days before obtaining a second search warrant on October 18. During the second warrant's execution, a .32 caliber handgun containing defendant's DNA and a .32 caliber cartridge were found in the concealed area.

Prior to trial, the motion judge, who was not the trial judge or sentencing judge, denied defendant's motion to suppress the handgun. Defendant claimed

A-1648-18

the decision by police to retain Camarota's vehicle thirty days after the first warrant had expired on September 17, and before obtaining the second warrant, was a violation of the Fourth Amendment. The motion judge disagreed, ruling

> [T]here's no direct case law that says . . . after you get a search warrant, you seize a vehicle, the vehicle has to be returned within x number of days, and then if you want to go search it again, you go get a new search warrant, find the vehicle[,] and search it again.

The judge found there was probable cause for the issuance of the second warrant.

During the December 2016 trial, the prosecutor asked Atlantic City Detective James Brennan on direct examination about attempts to locate the vehicle. When the detective stated, "I was familiar with a vehicle from previous police contact," the defense objected. The trial judge overruled the objection but advised the jury that the comment was in reference to a prior "motor vehicle summons" involving defendant's use of the vehicle.

Also, during the trial, Camarota testified that defendant did not threaten her. Prior to her testimony, the trial judge conducted a Rule 104 hearing under State v. Gross, 121 NJ 1 (1990), to determine if the State could introduce Camarota's prior inconsistent statements asserting defendant threatened to kill her if she testified, slapped her, accused her of being a confidential informant, and told her to "be careful." The judge found "by a preponderance of the

7

credible evidence that the [prior recorded] statements are sufficiently reliable and[,] provided Camarota testifies to the contrary, the State would be permitted to play the recordings in open court for the jury." The State was also allowed to inform the jury of Camarota's prior inconsistent statements indicating that defendant was one of the shooters at Ortiz and that the shooting involved trying to kill someone named "Moo Moo." To rebut the statements, the defense pointed out on Camarota's cross-examination that she had spoken to police "several times prior" and never said anything about defendant having been involved in the shooting.

During the jury charge regarding the prior inconsistent statements, the judge stated:

> Evidence has been presented showing that at a prior time a witness, Mercede[s] Camarota, has said something or has failed to say something which is inconsistent with the witness's testimony at the trial. You may consider this evidence along with all the other evidence in the case. In deciding whether any such statement, if made, is credible, you should consider any relevant factors including [her] connection to and interest in the matter reported in her prior statement, the person or persons to whom she gave the statement, the place and occasion for giving the statement, whether [she] was then in custody or otherwise the target of an investigation, [her] physical and mental condition . . . at the time, the presence or absence of any other persons, whether [she] incriminated herself or sought to exculpate herself by the statement, the presence or

A-1648-18

absence and the nature of any interrogation, whether the sound recording contains all or only a portion or a summary of what [she] said, the presence or absence of any motive to fabricate, the presence or absence of any explicit or implicit pressures, inducement or coercion for making the statement, whether the use to which the authorities would put the statement was apparent or made to [her], the inherent believability or lack of believability of the statement, the presence or absence of corroborating evidence.

I further instruct you that a witness's prior inconsistent statement under police interrogation must be carefully examined and assessed in light of all the surrounding circumstances, including her interest in giving the statement at that time[.] If you decide that the statement is reliable, then you may consider it for its truth and weight along with . . . all the other evidence in this case. However, if you decide that the statement is not reliable, then you may not consider it for any purpose at all.

On December 12, the jury found defendant guilty of first-degree witness tampering and one count of second-degree unlawful possession of a weapon. On the murder charge, the jury was confused about whether they had reached a unanimous verdict, so the judge directed the jurors to return to the jury room to determine whether their respective votes on each count were unanimous. The jury subsequently announced it was deadlocked on the lesser-included charge of aggravated manslaughter and the conspiracy charge, but acquitted defendant of the remaining charges. Because defendant was found guilty of one count of second-degree unlawful possession of a weapon, he stipulated he was a "certain

9

person" under N.J.S.A. 2C:39-7, and consented to having the court determine his guilt on one count of certain persons not to possess a weapon. The judge found him guilty of the offense under that count, and not guilty of the other count charging certain persons not to possess a weapon.

Defendant moved for a mistrial based on the jury's initial confusion regarding unanimity on the murder count. The trial judge denied the motion, finding:

> The [c]ourt has considered that [because of the confusion, no verdict rendered by the jury should be entered and it should be a mistrial as to all counts], however, although there may have been some confusion on the jury's understanding . . . they have, in fact, reached unanimity on four of the six counts. That has been confirmed. They indicated that there is no amount of time that would allow them to deliberate that could lead them to unanimity on [first-degree murder or first-degree conspiracy to commit murder]. As a result, since they cannot reach unanimity on [those charges], then they cannot proceed to the lesser included charges. . . .
>
> So, as a result, the [c]ourt is inclined to accept a partial verdict . . . .

On June 16, 2017, a different judge (the sentencing judge), sentenced defendant because the trial judge was nominated to be Atlantic County Prosecutor on February 28. Defendant argued that because he was indicted for second-degree witness tampering, his conviction for first-degree witness

10

tampering should be downgraded to the second degree. The sentencing judge

denied the application and sentenced defendant as follows:

> The [c]ourt concludes that a mandatory extended term is required on [second-degree unlawful possession of a weapon] pursuant to the Graves Act, N.J.S.A. 2C:43-6(c). Further, the chronological sequencing of the defendant's firearms convictions are not determinative of the requirement to impose a mandatory extended term on this count. See State v. Hawks, 114 N.J. 359, [1989] and State v. Halisky, 140 N.J. 1, a 1995 case.
>
> . . . .
>
> [T]he [c]ourt will consider whether to impose a consecutive sentence under an analysis of the [State v.] Yarbough[, 100 N.J. 627 (1985)] factors.
>
> . . . .
>
> [Defendant] is [twenty-seven] years old. His criminal history is extensive[,] with ten arrests resulting in six convictions, two indictable[,] and four [in] municipal [court].
>
> His previous convictions involve[d] [possession of controlled dangerous substances] with intent to distribute, assault, disorderly conduct, possession of marijuana[,] and obstruction. He's been to prison before. When afforded probation in the past, he violated. He was last released from State Prison on August 25th of 2015[,] where he was serving a prison sentence from a handgun charge.
>
> Defendant has a domestic record without final restraints. Defendant has an extensive juvenile record

11

with eight arrests and six adjudications for aggravated assault, possession with intent, conspiracy to commit robbery and resisting, possession of marijuana, receiving[,] and trespass.

He has served a term of juvenile probation and detention. When afforded probation and [Intensive Supervision Program,] he violated. [D]efendant reports no serious substance issues. He is unemployed owing to his incarceration. He has completed his high school education. He is unmarried and has one child to whom he is in arrears in child support.

Based on all these facts and circumstances, the [c]ourt finds and concludes that the following aggravating factors apply to this sentence.

Aggravating factor [three, N.J.S.A. 2C:44-1(a)(3)] applies and has great weight. There is more than a risk that this defendant will commit another offense. If left to his own devices, it is a virtual certainty that he will offend again and violently.

[D]efendant's criminality has been escalating dangerously and sharply since his teen years. There is little doubt that . . . defendant will offend again.

Aggravating factor [five, N.J.S.A. 2C:44-1(a)(5)] applies and has significant weight. There is a substantial likelihood that the defendant is involved . . . in organized criminal activity. Defendant has been involved with street crime and gang criminality since his teen years.

The incident during which . . . defendant intimidated a witness stems from violent street gang behavior to frustrate the course of criminal justice by promoting and violently enforcing the ["]no[-]snitch["]

12

mentality. This aggravating factor has great weight and is applied to [c]ount [six], witness tampering.

Aggravating factor [six, N.J.S.A. 2C:44-1(a)(6)] applies and has great weight. The extent of . . . defendant's prior criminal record and the seriousness of the offense of which he's been convicted is apparent. [D]efendant has been in and out of incarceration and has been racking up offenses for most of his life.

. . . .

Aggravating factor [nine, N.J.S.A. 2C:44-1(a)(9)] applies and has the greatest weight. There is a very strong need to deter this defendant from violating the law. Prior sanctions[,] including probationary and prison sentences[,] have not adequately deterred his criminality. A very substantial commitment to State Prison is now required to specifically deter . . . defendant from future criminality.

. . . .

The [c]ourt has carefully considered the entirety of the record in this case and can find no mitigating factors that apply.

. . . The aggravating factors clearly and substantially in quality and quantity outweigh the absence of mitigating factors or any other factor.

Given the great weight of the aggravating factors[,] a sentence well-above the mid[-]range is required on each count.

Defendant was sentenced to an aggregate prison term of thirty-five years with eighteen years of parole ineligibility based on: a mandatory extended term

of seventeen years for second-degree unlawful possession of a weapon, with eight-and-a-half years of parole ineligibility; consecutive to a mandatory extended term of eighteen years for first-degree witness-tampering, with nine-and-a-half years of parole ineligibility; and a concurrent ten-year term for the second-degree certain persons conviction. The State dismissed the deadlocked conspiracy charge.

II

Defendant argues the motion judge erred in denying his motion to suppress the search and seizure of the handgun pursuant to the second search warrant. There is no merit to this argument. He cites no legal support for his argument that the search was unreasonable under our federal and state constitutions because the first search warrant was executed without discovering the handgun and the police continued to hold the vehicle for forty days before obtaining the second warrant.

Defendant's challenge to the denial of his motion to suppress is strictly a legal one, as there are no factual disputes regarding the issuance of the two search warrants and their execution. Thus, we owe no deference to the motion judge's order. State v. Gamble, 218 N.J. 412, 425 (2014).

A-1648-18

Our Supreme Court has held that "[l]egally-seized property may be retained as long as the retention is reasonably related to the government's legitimate need for it." State v. One 1986 Subaru, 120 N.J. 310, 317 (1990) (citing United States v. Premises known as 608 Taylor Ave., 584 F.2d 1297, 1302-04 (3d Cir. 1978)); see also Lavezzi v. State, 219 N.J. 163, 178-79 (2014) ("The retention of evidence during a criminal investigation, like the seizure of that evidence, is a law enforcement activity."). As the State correctly notes, it "[has the right] to retain evidence pending a criminal prosecution." N.J.S.A. 2C:64-4(a).

Camarota's vehicle was legally seized as evidence of a murder and held by the police. Given there is no dispute the vehicle was legally in police custody, defendant does not have a Fourth Amendment claim. His argument that the vehicle had to be returned to Camarota after the first warrant had expired is not supported by statute, court rule, or case law. In fact, Camarota, the vehicle's owner, maintained communication with the police regarding the retention of vehicle and never asked for her car back. In short, there was nothing unreasonable about the police's decision to retain the vehicle and obtain a second search warrant upon obtaining new information because the first search had

expired. Thus, denial of defendant's motion to suppress was not a manifest denial of justice, nor an abuse of discretion.

III

Defendant argues the trial judge erred in his application of <u>Gross</u> to allow the State to admit Camarota's prior inconsistent statements as substantive evidence because the State did not prove that they met the special reliability requirements. He maintains Camarota did not initially implicate him in the shooting or identify him in any of the surveillance video that was shown to her. He argues that she only gave her alleged prior inconsistent statements after she was placed in a holding cell and charged with second-degree unlawful possession of the handgun found in her vehicle. Her incarceration, according to defendant, made the statements unreliable. Thus, the admissibility of her prior statements violated his state and federal constitutional rights, including those under the Confrontation Clause of the Sixth Amendment. In his pro se brief, defendant argues he never waived federal or state constitutional rights of confrontation and cross-examination. We do not agree.

When a witness's testimony differs from his or her own prior statement, our evidentiary rules permit prior statements to be admitted as substantive evidence. N.J.R.E. 803(a)(1) is designed "to limit substantive admissibility of

16                                                                    A-1648-18

prior inconsistent statements . . . to those statements given in a form and under circumstances importing special reliability." Gross, 121 N.J. at 9 (citations omitted). Further, "when the statement is offered by the party calling the declarant-witness, it is admissible only if . . . [it] is contained in a sound recording or in a writing made or signed by the declarant-witness in circumstances establishing its reliability." N.J.R.E. 803(a)(1)(A). And "when a witness testifies at trial inconsistent with a signed or sound-recorded statement admissible under N.J.R.E. 803(a)(1), the Confrontation Clause is not offended by the reading or playing of the out-of-court statement to the jury provided that the defendant has the opportunity to cross-examine the witness." State v. Cabbell, 207 N.J. 311, 336 (2011).

The prior inconsistent "statement[] must pass the double hurdle of a . . . hearing on admissibility and in-court cross-examination prior to a finding on sufficiency." State v. Mancine, 124 N.J. 232, 248, 590 A.2d 1107 (1991). At a reliability hearing, "the court should be convinced by a preponderance of the evidence that the evidence is sufficiently reliable for presentation to the jury . . . ." State v. Brown, 138 N.J. 481, 539 (1994). The burden is on the party offering the statement to show its reliability by a "fair preponderance of the evidence." Gross, 121 N.J. at 15. "The determination of the reliability of

17

pretrial statements must take into account all relevant circumstances." State v. Michaels, 136 N.J. 299, 317 (1994). The Gross Court "detailed the range of factors that might bear on the reliability of a pretrial statement[,]" including "the person or persons to whom the statement was made; the manner and form of interrogation; the physical and mental condition of the declarant[;] the use of inducements, threats or bribes; and the inherent believability of the statement." Ibid.

If a statement is admitted under N.J.R.E. 803(a), the jury should be instructed to consider the same kinds of factors as enumerated above when "assessing its credibility and probative worth." Gross, 121 N.J. at 16-17. For example, a jury "could be instructed that the witness'[s] prior inconsistent statement under police interrogation must be carefully scrutinized and assessed in light of all the surrounding circumstances, including [the witness's] interest in giving the statement at that time." Id. at 17.

We discern no abuse of discretion in allowing the admission of Camarota's prior inconsistent statements. After conducting a Rule 104 hearing, the trial judge thoroughly analyzed all relevant Gross factors before concluding that the statements possessed sufficient reliability to permit admission. And as the State correctly notes, defendant was charged with witness tampering, thus, Camarota's

statements were admissible as a hearsay exception because they were "offered against a party who has engaged, directly or indirectly, in wrongdoing that was intended to, and did, procure the unavailability of the declarant as a witness." N.J.R.E. 804(b)(9).  The statements were properly presented to establish that defendant threatened Camarota so that she would not testify against him.

IV

Defendant argues Brennan's testimony that he was "familiar" with the vehicle attributed to defendant and involved in the shooting was prejudicial, which the trial judge failed to remedy with a curative instruction to the jury to disregard the statement.  He claims a new trial is warranted because evidence of his prior involvement with the police predisposed the jury to think he was a bad person.  In support, defendant points to case law stating that it is prejudicial to a defendant if the jury is aware that a defendant is in pretrial custody or was imprisoned.  See State v. Harris, 156 N.J. 122 (1998) (reference to mug shot photo arrays); State v. Porambo, 226 N.J. Super. 416 (App. Div. 1988) (evidence that officer had previously weighed and measured the defendant).  There is no merit to the argument.

Defendant stipulated to the fact that on both August 26 and September 3, 2012, ten and three days, respectively, before the September 6 shooting, he was

pulled over by police while driving Camarota's vehicle and was issued a motor vehicle summons. It was perfectly appropriate for the trial judge to explain this to the jury when the defense objected to Brennan's statement. Thus, there is no reasonable basis to conclude that the detective's reference to his familiarity with the vehicle produced an unjust result. See State v. Williams, 404 N.J. Super. 147, 169 (App. Div. 2008) ("[T]he factual assertions by the court constituted stipulated facts. N.J.R.E. 101(a)(4). Furthermore, we find no basis for defendant's contention that the responses were capable of producing an unjust result."). Moreover, there was no intimation that defendant was held in custody or incarcerated based on the motor vehicle summons.

Besides, defendant is barred by the doctrine of invited error from arguing before us that the judge erred in revealing the stipulated fact to the jury. "A party who consents to, acquiesces in, or encourages an error cannot use that error as the basis for an objection on appeal." Spedick v. Murphy, 266 N.J. Super. 573, 593 (App. Div. 1993) (holding the plaintiff was barred from challenging the admission of the testimony on appeal where it appeared from the colloquy between the trial judge and the attorneys, that the plaintiff "essentially agreed" to permit certain testimony); see also N.J. Div. of Youth and Fam. Servs. v. M.C., III, 201 N.J. 328, 340 (2010) (holding invited error bars "a disappointed

litigant from arguing on appeal that an adverse decision below was the product of error, when that party urged the lower court to adopt the proposition now alleged to be error") (internal quotation marks and citation omitted).

In sum, the trial judge did not abuse his discretion by not telling the jury to disregard Brennan's testimony that he was familiar with the vehicle associated with defendant.

V

Defendant argues the trial judge erred in denying his motions for mistrial that was based on the fragmented jury verdict announcements. He asserts the judge failed to ensure that the jury understood its verdict was final when they announced it, then discovered that there was no unanimity. He maintains that the judge should have ensured that the jury understood its verdict was final before it accepted the verdict. See State v. Shomo, 129 N.J. 248, 258 (1992) ("When the jury returns an interim partial verdict, the court must ensure that the jury intended its partial verdict to be final by specifically instructing the jury regarding the verdict's finality.").

Rule 4:49-1(a) provides that a trial judge shall grant a new trial if, "having given due regard to the opportunity of the jury to pass upon the credibility of the witnesses, it clearly and convincingly appears that there was a miscarriage of

21

justice under the law."  Mistrials should only be granted "with the greatest caution, under urgent circumstances, and for very plain and obvious causes." State v. Loyal, 164 N.J. 418, 436 (2000) (citation omitted).  Accordingly, trial judges should exercise their discretion to grant a mistrial "with great reluctance, and only in cases of clear injustice. . . . Neither trial nor appellate courts may grant a new trial unless it clearly appears there was a miscarriage of justice." Boryszewski v. Burke, 380 N.J. Super. 361, 391 (App. Div. 2005).  "Whether an event at trial justifies a mistrial is a decision 'entrusted to the sound discretion of the trial [judge].'"  State v. Smith, 224 N.J. 36, 47 (2016) (quoting State v. Harvey, 151 N.J. 117, 205 (1997)).  We will not disturb the denial of a mistrial "unless there is a clear showing of mistaken use of discretion by the trial court," Greenberg v. Stanley, 30 N.J. 485, 503 (1959) (citations omitted), or a manifest injustice would result, State v. LaBrutto, 114 N.J. 187, 207 (1989).

We discern no abuse of discretion by the trial judge.  A jury's initial expression of its verdict is not binding, and further deliberation is permissible, until the judge accepts the verdict.  See Shomo, 129 N.J. at 256 ("In certain circumstances, an interim partial verdict may assist a trial court in making orderly and expeditious progress in adjudicating a case."); United States v. Clainos, 163 F.2d 593, 596 (D.C.Cir.1947) (permitting partial verdicts can aid a

jury in proceeding methodically from count to count).  The jury's confusion as to the murder charge—of which defendant was acquitted—does not invalidate its verdict for the remaining counts.  We favor the State's contention that the jury's confusion was limited to the murder counts, which is irrelevant to its unanimity on the other counts, considering the trial judge's instructions were proper.  The judge here correctly allowed the jury to deliberate further after it expressed its confusion about the murder charge.  There is no reason to reverse the jury verdicts, as defendant suggests, because the judge's supplemental charge to resolve the deadlocked jury was not coercive.  Accordingly, the judge was correct in not granting a mistrial for every count when the jury was only initially unclear on its unanimity on a particular count.

VI

Defendant contends the sentencing judge erred in not granting his request for an evidentiary hearing to determine whether his convictions should be reversed because the trial judge was under consideration to be appointed the Atlantic County Prosecutor at the time of the trial and, thus, should have recused himself from presiding over the trial.  He maintains that under the Code of Judicial Conduct, Canon 2, Rule 2.1 "[a] judge shall avoid impropriety and the appearance of impropriety" and "[a] judge shall act at all times in a manner that

23

promotes public confidence in the independence, integrity[,] and impartiality of the judiciary and shall avoid impropriety and the appearance of impropriety."

Based upon our review of the trial record, defendant failed to present any evidence of a conflict of interest.  We therefore see no error in the sentencing judge's decision not to grant an evidentiary hearing.  Nonetheless, our ruling is without prejudice to defendant seeking relief through a petition for post-conviction (PCR) relief.  See generally State v. Preciose, 129 N.J. 451, 459-60 (1992) (indicating that PCR is for claims beyond trial record).

VII

Last, defendant raises several challenges to his sentence.  He contends his aggregate thirty-five sentence with an eighteen-year parole disqualifier is excessive given that he was found not guilty of first-degree murder, first-degree conspiracy to commit murder, and possession of the alleged murder weapon.  He contends it was error to sentence him to first-degree witness tampering given that he was charged with second-degree witness tampering in the indictment, and there was no application by the State to sentence him one degree higher or to amend the witness tampering charge to a first-degree crime.  Defendant also contends that the judge erred in imposing consecutive sentences for the weapon and witness tampering crimes, particularly in light of the length of the aggregate

sentence imposed on him. He notes that to determine whether to impose a concurrent or consecutive sentence, a judge should consider that "there can be no free crimes in a system for which the punishment shall fit the crime." Yarbough, 100 N.J. at 643.

As the State correctly points out, because defendant declined to object to the jury instructions directing the jury to consider whether he was guilty of first-degree witness tampering and not second-degree witness tampering as charged, or to the jury's verdict for first-degree witness tampering, he has waived the argument that he should have been convicted and sentenced for second-degree witness tampering. See State v. Del Fino, 100 N.J. 154, 160 (1985) ("[A]ll defenses and objections based on defects in the institution of the proceedings or in the indictment must be raised before trial. Except for good cause shown, failure to present any such defense constitutes a waiver."); see also State v. Laws, 262 N.J. Super. 551, 562 (1993) (providing that arguments about the grand jury must be raised at trial). Moreover, the first-degree witness tampering conviction was justified given the facts of the case. N.J.S.A. 2C:28-5 states, in relevant part:

> Witness tampering is a crime of the first degree if the conduct occurs in connection with an official proceeding or investigation involving any crime enumerated in subsection d. of section 2 of P.L.1997,

> c.117 (C.2C:43-7.2) [including murder under N.J.S.A.
> 2C:11-3] and the actor employs force or threat of force.
> Witness tampering is a crime of the second degree if the
> actor employs force or threat of force.  Otherwise[,] it
> is a crime of the third degree.

There is no question that defendant's alleged threats to Camarota occurred in connection with her cooperation with a murder investigation.  Based on the evidence presented and its credibility findings, the jury had a basis to find defendant guilty of first-degree witness tampering.  See State v. Warmbrun, 277 N.J. Super. 51, 60 (App. Div. 1994) (holding that once the jury convicts, its verdict establishes probable cause to indict, and a purported error in the indictment is rendered harmless.).

A mandatory extended term was required because defendant was convicted of unlawful possession of a weapon and certain persons charges under the Graves Act, N.J.S.A. 2C:43-6(c), which reads as follows:

> A person who has been convicted under subsection b.
> or d. of N.J.S.[A.] 2C:39-3 [(Prohibited weapons and
> devices)], subsection a. of N.J.S.[A.] 2C:39-4
> [(Possession of weapons for unlawful purposes)],
> subsection a. of section 1 of . . . [N.J.S.A. 2C:39-4.1]
> [(Possession of weapons during commission of certain
> crimes; penalties)], subsection a., b., c., or f. of
> N.J.S.[A.] 2C:39-5 [(Unlawful possession of
> weapons)], subsection a. or paragraph (2) or (3) of
> subsection b. of section 6 of . . . [N.J.S.A. 2C:39-7]
> [(Certain persons not to have weapons or ammunition)]
> . . . who, while in the course of committing or

attempting to commit the crime, including the immediate flight therefrom, used or was in possession of a firearm as defined in [N.J.S.A.] 2C:39-1[(f)], shall be sentenced to a term of imprisonment by the court. The term of imprisonment shall include the imposition of a minimum term. The minimum term shall be fixed at one-half of the sentence imposed by the court or forty-two months, whichever is greater, or eighteen months in the case of a fourth[-]degree crime, during which the defendant shall be ineligible for parole.

The minimum terms established by this section shall not prevent the court from imposing presumptive terms of imprisonment pursuant to [N.J.S.A.] 2C:44-1[(f)](1) except in cases of crimes of the fourth degree.

A person who has been convicted of an offense enumerated by this subsection and who used or possessed a firearm during its commission, attempted commission or flight therefrom and who has been previously convicted of an offense involving the use or possession of a firearm as defined in 2C:44-3[(d)], shall be sentenced by the court to an extended term as authorized by 2C:43-7[(c)], notwithstanding that extended terms are ordinarily discretionary with the court.

Pursuant to N.J.S.A. 2C:44-5(a), when a defendant receives multiple sentences of imprisonment "for more than one offense, . . . such multiple sentences shall run concurrently or consecutively as the court determines at the time of sentence." N.J.S.A. 2C:44-5(a) does not state when consecutive or concurrent sentences are appropriate. In Yarbough, the Court set forth the following guidelines:

27                                          A-1648-18

(1) there can be no free crimes in a system for which the punishment shall fit the crime;

(2) the reasons for imposing either a consecutive or concurrent sentence should be separately stated in the sentencing decision;

(3) some reasons to be considered by the sentencing court should include facts relating to the crimes, including whether or not:

> (a) the crimes and their objectives were predominantly independent of each other;
>
> (b) the crimes involved separate acts of violence or threats of violence;
>
> (c) the crimes were committed at different times or separate places, rather than being committed so closely in time and place as to indicate a single period of aberrant behavior;
>
> (d) any of the crimes involved multiple victims;
>
> (e) the convictions for which the sentences are to be imposed are numerous;

(4) there should be no double counting of aggravating factors;

(5) successive terms for the same offense should not ordinarily be equal to the punishment for the first offense[.]

[100 N.J. at 643-44 (footnote omitted).]

28

What had been guideline six was superseded by a 1993 amendment to N.J.S.A. 2C:44-5(a), which provides "[t]here shall be no overall outer limit on the cumulation of consecutive sentences for multiple offenses."[3]

The Yarbough guidelines leave a "fair degree of discretion in the sentencing courts." State v. Carey, 168 N.J. 413, 427 (2001). "[A] sentencing court may impose consecutive sentences even though a majority of the Yarbough factors support concurrent sentences," id. at 427-28, but the court must state its reasons for imposing consecutive sentences, and when a court fails to do so, a remand is needed in order for the court to place its reasoning on the record, State v. Miller, 205 N.J. 109, 129 (2011). When a trial court imposes a consecutive sentence, "[t]he focus should be on the fairness of the overall sentence." State v. Abdullah, 184 N.J. 497, 515 (2005) (alteration in original).

Here, the multiple convictions support consecutive sentences based on the sentencing judge's reasoning. The judge did not abuse his discretion, as the sentences imposed were consistent with our sentencing guidelines and do not shock the conscience. See State v. Bieniek, 200 N.J. 601, 608-09 (2010); State v. O'Donnell, 117 N.J. 210, 215-16 (1989). Hence, we will not disturb defendant's sentences.

---

[3] L. 1993, c. 223, § 1.

A-1648-18

Any arguments not specifically addressed are without sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-1648-18